ROBERTS et al. v. DREYER. (No. 5955.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 16, 1918. Rehearing Denied Feb. 20, 1918.)

1. DEEDS ☞112(1)—CONSTRUCTION—DESCRIPTIONS.

Where a deed described land by metes and bounds, chain of title, and reference to prior deeds, and by a name which was erroneous, the nominal description could not control, so as to make those purchasing at execution sale of the land described by name innocent purchasers, since they must have known the actual description in the recorded deed.

2. EVIDENCE ☞460(6) — PAROL — CONSTRUCTION OF DEED.

Where a deed described land by metes and bounds, chain of title, and reference to prior deeds, and by name which was erroneous, the testimony of the grantee therein was admissible to explain the deed.

3. DEEDS ☞111 — CONSTRUCTION—EVIDENCE —MATERIALITY.

Where the land named was sold under execution against the grantee, it was immaterial what were the intentions of the grantors and grantee, since the land sold under execution was not in fact included in the deed.

4. DEEDS ☞112(1)—CONSTRUCTION—DESCRIPTIONS—CONTROL.

Where a deed specifically described land by giving the chain of title and reference to records, a general description by name could not control.

5. ESTOPPEL ☞19—PARTIES NOT IN FAULT.

Since the deed was not calculated to deceive, the grantor was not estopped to deny title of persons who purchased on execution sale under levy against the grantee of the land described by name, and not in fact conveyed.

6. EVIDENCE ☞237—ADMISSIBILITY—ADMISSIONS OF THIRD PERSONS.

In trespass to try title, acts, admissions, or statements of plaintiff's son pending suit could not be used against her.

7. LIS PENDENS ☞24(4) — "INNOCENT PURCHASERS."

One purchasing land pending suit in trespass to try title was not an "innocent purchaser."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Innocent Purchaser.]

Error from District Court, Nueces County; W. B. Hopkins, Judge.

Action by Wilhelmina Dreyer against Fred Roberts and others. To review the judgment, defendants bring error. Affirmed.

G. R. Scott and Boone & Pope, all of Corpus Christi, for plaintiffs in error. Dawson & Anderson, of Corpus Christi, and Don A. Bliss, of San Antonio, for defendant in error.

FLY, C. J. This is an action of trespass to try title instituted by Wilhelmina Dreyer, a feme sole, against H. L. Dreyer, L. Sumrall, W. C. Knacker, Fred Roberts, T. H. Clark, H. N. Stamper, Hart Mussey, Sr., and C. J. Gray. The land sued for was described as being situated in Corpus Christi, Tex., and as being known as the "old Dreyer homestead," described by metes and bounds as follows:

"Beginning at the southwest corner of what is known as the Vineyard or Van Loan tract, for the extreme northern corner of tract; thence in an eastern direction with the south boundary line of said Vineyard or Van Loan tract, to the intersection of the western boundary line of Sam Rankin street; thence in a southern direction with the boundary line of Sam Rankin street to the intersection of the middle line of the street between blocks 54 and 55 of the bluff portion of the city of Corpus Christi; thence in a western direction along the north boundary line of the Clarkson addition to the said city of Corpus Christi to the southeast corner of

what is shown on the official map of said city, as the Justina Bluntzer tract lying north of said Clarkson addition; thence in a northern direction with the east boundary line of said Bluntzer tract to the northeast corner of the same; thence, in a western direction, with the north boundary line of said Bluntzer tract to the northeast corner of the same; thence in a northern direction with the meanders on the eastern bank of Salt Lake to the place of beginning."

The plaintiff in the court below claimed the land not only by a regular chain of conveyances from the sovereignty of the soil, but by limitation of three, five, and ten years. Gray disclaimed any interest, H. L. Dreyer failed to appear and answer, and Sumrall, Roberts, Clark, Stamper, and Mussey answered by a plea of not guilty and pleas of three, five, and ten years' limitation. The cause was heard by the court without a jury, and judgment rendered in favor of Wilhelmina Dreyer for the land.

Wilhelmina Dreyer showed title to the land. Plaintiffs in error claim the land through a sheriff's deed made by virtue of an execution issued in a suit instituted by I. T. Cayce against C. J. Gray on June 2, 1914, the property being sold as the property of C. J. Gray, the claim being based on a deed executed by Mrs. Dreyer to Gray which describes the land as five acres more or less situated in precinct No. 1 of Nueces county "which was sold by the sheriff of Nueces county, Tex., to make the amount of taxes and costs due by Robert Adams to the said county and state as shown by deed of Thomas Ryan, sheriff, dated June 5, 1877, to J. McKew," giving the page of its record. A further description is that it was sold by McKew to H. L. Dreyer and by the latter conveyed to Mrs. Dreyer. It was further described as the "old M. M. Dreyer place." The evidence showed that the land described was not known as the "old Dreyer home," but was a separate and distinct parcel of land from the "old Dreyer homestead." The land described in the deed to Gray is not the land for which Mrs. Dreyer sued. The land she sued for did not come to her through a tax deed, and was not the land sold by McKew to H. L. Dreyer. Mrs. Dreyer never executed a deed to Gray to the "old Dreyer homestead." She executed a deed to Gray to the certain five acres that had been sold for taxes under the impression that she was conveying the "old Dreyer homestead," but when it was ascertained that the wrong piece of land had been conveyed the trade between her and Gray was not consummated, and it was agreed that he should hold the McKew land in her behalf. He did not convey to her the land that he had agreed to convey as the consideration for her land. The land in controversy, the "old Dreyer home," was levied on, and sold as the property of C. J. Gray, and was bought by L. Sumrall and W. C. Knacker. Fred Roberts secured a deed to the land from Sumrall and Knacker while

the suit was pending. Roberts and wife afterwards executed a deed of trust on the land to secure a debt due to H. N. Stamper and Hart Mussey, Sr.; T. H. Clark being the trustee.

[1] Gray never had a deed to the land in controversy, and intending purchasers could not have been innocent purchasers, because the records disclosed to them that the land had never been sold to Gray. It may be, as stated, that the deed from Mrs. Dreyer to Gray conveyed her right, title and interest to him, but that is a different tract of land from the one sued for by Mrs. Dreyer. That deed certainly did not convey land not described therein. The land in controversy consisted of three parcels, known as the "old Dreyer homestead" or the "old Dreyer home place." The first parcel was conveyed to H. L. Dreyer on May 4, 1869, the second on January 26, 1874, and the third on January 18, 1878. He was married, when he bought the land, to Wilhelmina Dreyer, and they lived on the land for over ten years, using it as a home. The three tracts contained four acres. The five acres of land, a deed to which was held by C. J. Gray, was sold by J. A. Vernon in 1854 to Robert Adams, was sold by the sheriff, for taxes owed by Adams, to Joseph McKew, and on December 18, 1878, Joseph McKew sold the land to H. L. Dreyer. The deed given by Mrs. Dreyer to Gray recited the fact that the land was sold for taxes to McKew by the sheriff and was sold by McKew to H. L. Dreyer, and that it was known as the "old M. M. Dreyer place." The land in controversy was never so known. The deed also recited that the land had been conveyed on a certain date by H. L. Dreyer to Wilhelmina Dreyer. The terms of the deed put every one upon notice that the land sold to Gray was not the "old Dreyer homestead." The description of the land by giving name "old M. M. Dreyer place" could not lead any one to believe that the "old Dreyer homestead" was meant, but, if it did, being clearly erroneous, and clearly shown so by the other description, it could not control. Devlin, Real Estate, §§ 1038–1040. There was in existence no land known as the "old M. M. Dreyer place." The testimony amply sustained this fact.

[2, 3] We are of the opinion that the testimony of Gray in explanation of the deed was admissible, but if it were not it could not have injured plaintiffs in error, because the deed did not purport to convey the land in controversy. What the secret intentions of Mrs. Dreyer and Gray were would be of no importance, because the purchasers of the land at the constable's sale were not influenced by those intentions, for the reason that they were not acquainted with such intentions. They acted on the deed which did not convey the land in controversy to Gray and the constable did not levy upon and sell the land held by Gray, but another and dif-

ferent tract. The first, second, third, and fourth assignments of error are overruled.

It would not matter what Mrs. Dreyer intended to do; she did not convey the land in controversy to Gray, and the deed she executed could not have possibly led purchasers to believe that she intended to convey land other than that described in the deed. In fact it appeared that the parties to the deed did not claim that it conveyed the land sued for, but, on the other hand, acted upon the conclusion that it did not.

[4] The land was specifically described by giving the chain of title, reference to deeds with dates and pages of the records of deeds on which they were recorded, and the general description could not control that description. Cullers v. Platt, 81 Tex. 258, 16 S. W. 1003. The description in the deed could not possibly have contained the land in controversy, and the words "old M. M. Dreyer place" could not control the particular description. Any one reading the deed would know that the deeds referred to could not and did not describe the land sued for, but a different tract of land, and the general description should not have deceived any one. Nelson v. Butler, 190 S. W. 811.

[5-7] The doctrine of estoppel does not apply to Mrs. Dreyer in this case. Her deed to Gray was not calculated to mislead any one. No one was deceived by the deed, but it was plain and clear. Of course, the actions, admissions, or statements of Henry Dreyer, her son, made while the suit was pending, could not be used against her if they had been pertinent or important. Roberts purchased pendente lite, and could not become an innocent purchaser by reason of what some one may have told him as to the intentions of the plaintiff in the suit.

There is no merit in any of the assignments of error, and the judgment is affirmed.

